LAND, J.
Plaintiff sued tbe defendant firm and the two members thereof in solido to recover the sum of $2,580, with legal interest thereon from December 9, 1912, the market value of three certain 4% per cent, bonds of the New Orleans Railway & Light Company delivered on said day by the plaintiff to said brokerage firm as margin for the purchase of $15,000 City 4’s, falsely stated to have been purchased by said firm on December 9, 1912, for account of the plaintiff.
Danziger, having defaulted and absconded, was made a party through a curator appointed by the court.
Chas. A. Tessier, the other member of the firm, defended on the ground that the transaction set forth in the petition was an individual matter between the plaintiff and T. Walter Danziger, with which the firm had nothing to do.
There was judgment for the plaintiff, and the defendants have appealed.
Plaintiff’s case is based on three exhibits made out in the office of the defendant firm, by its bookkeeper, and two of them signed by Danziger in the name of his firm, all three of them delivered to the plaintiff, reading as follows:
Plaintiff’s Exhibit No. 1.
C. A. Tessier. T. W. Danziger.
Danziger & Tessier, 134 Carondelet St.
Tel. Main 204. New Orleans, La., Dec. 9, 1912.
Received from Mr. A. F. Culligan $3,000.00 N. O. Rys. 4% bonds, Nos. 8210, 8211, 8212, as margin for $15,000.00 City Fours purchased this day for his account.
[Signed] Danziger & Tessier.
Plaintiff’s Exhibit No. 2.
C. A. Tessier. T. W. Danziger.
Danziger & Tessier, 134 Carondelet St.
New Orleans, La., Dec. 9, 1912.
Mr. A. F. Culligan, City — Dear Sir: In accordance with your instructions we have this day purchased for your account $15,000.00 City Fours at 96; deliver to-morrow.
Tours respectfully,
[Signed] Danziger & Tessier.
Plaintiff’s Exhibit No. 3.
C. A. Tessier. T. W. Danziger.
Danziger & Tessier, 134 Carondelet St.
New Orleans, La., Dec. 9, 1912.
Bought $15,000 City Fours at 96... $14,400.00
Interest, 5 mos. 9 days........... 265.00
Brokerage, $2.50 per 1,000........ 37.50
$14,702.50
To Mr. A. F. Culligan.
[4] These three exhibits were copied into the letter stock book of Danziger & Tessier, but no corresponding entries were made on the books of the firm.
The bookkeeper testified that Danziger told him that it was a private transaction, and that he thereupon wrote on the margin:
“Don’t enter, private. T. W. D.”
Danziger kept plaintiff’s bonds, and converted them to his own use.
The use of the firm’s name would have been entirely unnecessary if plaintiff was dealing with Danziger as an individual; and the fact that the three contemporaneous exhibits were all in the firm’s name corroborates plaintiff’s testimony that his deal was with the firm, represented by Danziger.
The few isolated facts suggesting the contrary cited by defendant’s counsel are wholly insufficient to overcome plaintiff’s direct and positive testimony on the subject-matter, supported as it is by the exhibits delivered to him at the time.
We agree with the judge below that plaintiff contracted with the partnership.
The answer of Tessier admits that his firm had previous transactions with the plaintiff, which were closed out May 15,1912, *1055 and avers that the next and last transaction between them was on December 19, 1912, when the firm purchased for the plaintiff two certain bonds, for which payment was made on December 20, 1912.
The exhibits in the record show that Danziger & Tessier on August 21, 1911, purchased for account of the plaintiff 20 shares of Whitney Central National Bank stock on a margin, represented by a mortgage note for $1,000, and on April 13, 1912, purchased 10 more shares of the same stock, and on May 12, 1912, sold the 30 shares and closed the account.
The exhibits also show that on December 19, 1912, the said firm purchased for the plaintiff $2,000 Birmingham 4% bonds.
This seems to have been a cash transaction.
Plaintiff pledged these bonds to Danziger to secure a demand loan of $1,200.
On October 24,1913, a statement was made up under the usual letter head of Danziger & Tessier, commencing:
“A. F. Culligan, in Account with T. W. Danziger”
—and giving an account of the purchase of $15,000 City 4’s on December 9, 1912, with debits of interest accrued on the purchase price and credits of coupons collected.
The plaintiff received the statement, but testified that he did not notice that the name of “T. W. Danziger” appeared instead of the firm’s name.
Having reached the conclusion that the plaintiff dealt with the firm, we see no good reason for not accepting his explanation that, as the statement was under the firm’s usual letter head, he paid no particular attention to the caption of the account.
[1] The plaintiff and Danziger were personal and business friends, and had a number of individual transactions between themselves.
As above shown, plaintiff’s dealings were with the -firm, represented by Danziger. There is nothing strange that in the familiar correspondence between them reference was made now and then to both firm and individual business.
■ The firm’s dealings with the plaintiff prior to December 9, 1912, as shown by its books, conclude Tessier from asserting, as against the plaintiff, that Danziger, his partner, had no authority to bind the firm by the purchase of bonds and stocks on margins.
[2] The answer admits, as alleged in the first paragraph of the petition, that Danziger & Tessier was a—
“commercial partnership * * * engaged in the stock, bond and securities brokerage business and buying, selling, and dealing in stocks, bonds, and securities.”
The facts thus judicially admitted conclude the contention made in this court that the firm of Danziger & Tessier was an ordinary partnership.
[3] The further contention that the transaction between the plaintiff and the firm was a gambling speculation was not made in the court below, and cannot be injected by argument into the defendants’ pleadings in this court.
Judgment affirmed.